MW

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

I.J.,

    Petitioner,

v.

Charles Keeton, et al.,

    Respondents.

No. CV-19-01904-PHX-SMB (JZB)

**ORDER**

Petitioner I.J., who is detained in the CoreCivic Eloy Detention Center in Eloy, Arizona, has filed, through counsel, a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) and a Motion for Temporary Restraining Order (Doc. 2). The Motion is fully briefed, and for the reasons that follow, it will be granted in part.[1]

**I.  Background**

Petitioner is a native and citizen of Bangladesh. On March 26, 2018, he departed Bangladesh and, with the assistance of smugglers, traveled through Brazil, Peru, Ecuador, Columbia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico. He entered the United States near San Ysidro, California on July 20, 2018, and was encountered by the United States Department of Homeland Security (DHS), Customs and Border Protection (CBP). (Doc. 7-7.) Petitioner was taken into custody and transported to the Imperial Beach Border Patrol Station. At the station, Petitioner's biographical and biometric information was entered into the DHS processing system, which included a date

---

[1] The Court finds this matter is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

of birth, recorded as November 25, 1997, and the number of an identifying Bangladesh passport (ending in 6241). (*See* Doc. 7-7 at 2, 4, 13.) Petitioner was then interviewed, at which time he advised agents that his date of birth was November 25, 2001. (Doc. 7-7 at 5.) He was designated as an unaccompanied alien child with a date of birth of November 25, 2001, issued a Notice to Appear, and transferred into the care and custody of the United States Department of Health and Human Services (HHS), Administration for Children and Families, Office of Refugee Resettlement (ORR). (Docs. 1-2 at 45-46; 7-4; 7-7 at 2-5.)

ORR placed Petitioner in a Southwest Key juvenile residential care facility in Phoenix, Arizona on July 24, 2018. Petitioner's ORR case manager requested and obtained a copy of his birth certificate from his mother in Bangladesh; the certificate listed November 25, 2001 as Petitioner's date of birth. (Docs. 1-2 at 2, 45-46; 7-4; 7-7 at 16-19.)

In October 2018, ORR Federal Field Specialist (FFS) Myrian Hillin "was informed that Immigration and Customs Enforcement [(ICE)] had information showing that a number of individuals of Bangladeshi origin in ORR's custody may be fraudulently claiming to be underage" and "that for a large number of such individuals, passports indicated a different birth date than that appearing on birth certificates." (Doc. 7-2 ¶ 4.) "Based on th[e] concern that adults might be housed with minors, and in accordance with directions from [her] supervisors, [Hillin] ordered a dental forensic examination of [Petitioner]." (Doc. 7-2 ¶ 5.)

Following an examination, Dr. Peter Arvantis, DDS prepared two dental age assessment reports for Petitioner. In one report dated October 17, 2018, he opined that, based upon his analysis of dental radiographs, the range of possible ages for a male with the molar development of Petitioner was "19.74 to 22.84 years." He therefore concluded that the "empirical statistical probability of [Petitioner] having attained 18 years of age is 87.05." The report stated Petitioner's reported age was 17, and his ancestry was "Pooled." (Docs. 1-2 at 12; 8-1 at 5.) In a second report also dated October 17, 2018, Dr. Arvantis opined that, based upon his analysis of dental radiographs, the range of possible ages for a male with the molar development of Petitioner was "16.29 to 24.41 years," and concluded

that the "empirical statistical probability of [Petitioner] having attained 18 years of age is 87.70." The report indicated Petitioner's reported age was 16, and his ancestry was European. (Docs. 7-3; 7-7 at 18; 8-1 at 6.)

On October 24, 2018, Hillin "signed an age redetermination memorandum … that could be used in the event that [Petitioner] needed to be moved out of Southwest Key Cas[a] Phoenix." (Doc. 7-2 ¶ 7.) In the memorandum, Hillin reported that it was "apparent to the case manager that [Petitioner] appeared physically older than 17 years of age," neither Petitioner nor his mother had been able to provide "a second type of identification" as requested by the case manager, the "[c]ase [m]anager then requested dental forensics[,] and on October 17, 2018, Dr. Arvantis concluded that the probability that [Petitioner] attained 18 years of age is 87.70%." (Docs. 1-2 at 45; 7-4.) Hillin further outlined Petitioner's narrative of his travel to the United States, noting that he "was extremely nervous when explaining his journey and providing details of the various and multiple events that occurred throughout his long and complex voyage." Her memorandum concluded that, "[i]n accordance with ORR age redetermination policy and procedures, [Petitioner's] dental forensics results are 87.70% and ORR requests that [Field Office Juvenile Coordinator (FOJC)] coordinates and ensure[s] the immediate transfer of custody of this individual to an adult [ICE] facility." (Docs. 1-2 at 45-46; 7-4.) On November 1, 2018, Hillin "formally submit[ted] the memorandum."[2] (Doc. 7-2 ¶ 7.)

Petitioner was taken into ICE custody and detained in an adult facility at the CoreCivic La Palma Correctional Center in Eloy, Arizona. (Doc. 7-6 ¶ 9.) Petitioner was issued a superseding Notice to Appear on November 13, 2018, which charged him as removable from the United States pursuant to Immigration and Nationality Act (INA) § 212(a)(2)(A)(i), 8 U.S.C. 1182(a)(2)(A)(i). (Doc. 7-7 at 23-24.) On December 6, 2018, Petitioner received a custody redetermination hearing before an Immigration Judge. At the hearing, Petitioner's former counsel presented a copy of a birth certificate, which listed his

---

[2] In a screen printout attached to Hillin's declaration, which she refers to as a "discharge notification," the "Date of Decision" is entered as October 31, 2018. (Docs. 7-2 ¶ 16; 7-5.)

date of birth as November 25, 2001, and a copy of a Bangladesh passport (ending in 6241), which listed his date of birth as November 25, 1997. (Doc. 7-8.) Petitioner was granted release on bond in the amount of $10,000, subject to verification of the passport. (Doc. 7-6 ¶ 15.) ICE obtained the original passport from Petitioner's counsel and found the information matched the passport information received by the Juvenile and Family Residential Management Unit (JRFMU) from the Embassy of Bangladesh in Washington, D.C. (Docs. 7-6 ¶¶ 14-17; 7-7 at 26.) On January 16, 2019, ICE then redetermined Petitioner's custody status at no bond.

Petitioner obtained new counsel, and on March 21, 2019, counsel emailed ICE requesting that Petitioner be transferred back into ORR custody. She provided ICE documentation listing Petitioner's date of birth as November 25, 2001, including (1) a birth certificate; (2) a Bangladesh passport (ending in 6851); (3) school records; (4) character letters; (5) immunization records; and (6) a student identification card. (Doc. 1-2 at 90-91.) ICE denied counsel's request and determined that Petitioner would continue to be detained in ICE custody. ICE "determined [Petitioner] was still an adult because of information that was attained through communication with ORR, who ordered a dental forensics examination that determined there was an 87.7% probability that [Petitioner] was 18 years of age[,]" Petitioner's "travels outside of the United States, which reflected that [Petitioner] travelled outside the United States utilizing … a date of birth of … 1997," and "the original passport booklet provided by [Petitioner's] counsel and the verification information from the Bangladesh Embassy in Washington, D.C., which indicated [Petitioner] has a date of birth of … 1997." (Doc. 7-6 ¶ 19.)

Petitioner filed a § 2241 Petition and Motion for Temporary Restraining Order on March 22, 2019. On March 27, 2019, Petitioner was transferred to the Eloy Detention Center and placed in segregated custody to separate him from adults pending the outcome of this proceeding. (Doc. 7-6 ¶ 22.)

**II.   Petition**

In the Petition, Petitioner names La Palma Correctional Center Warden Charles

Keeton,[3] ICE Phoenix Field Office Director Enrique Lucero, ICE Assistant Field Office Director Jason Ciliberti, former DHS Secretary Kirstjen Nielsen, HHS Secretary Alex Azar II, DHS, ICE, HHS, ORR, and the United States as Respondents.  Petitioner brings four grounds for relief challenging his continued detention in DHS custody.  Petitioner claims that: (1) his detention in DHS custody pursuant to ORR's age determination violates the Trafficking Victims Protection and Reauthorization Act of 2008 (TVPRA) and its implementing policies; (2) his detention as a minor in a facility that does not have "separate accommodations for juveniles" violates 8 C.F.R. § 1236.3(d); (3) his detention arbitrarily deprives him of his liberty in violation of his substantive due process rights under the Fifth Amendment; and (4) his detention without a hearing violates his right to procedural due process under the Fifth Amendment.[4]

In his demand for relief, Petitioner asks the Court to: (1) order Respondents to release him from DHS custody and transfer him into the care and custody of ORR; (2) declare that ORR's policy of making age determinations based solely on dental radiographic analysis violates the TVPRA; (3) declare that Respondents have violated their policies for referring individuals to DHS in violation of the TVPRA; and (4) declare that Petitioner is an unaccompanied alien child entitled to protection under the law, including eligibility for Special Immigrant Juveniles Status (SIJS) under 8 U.S.C. § 1101(a)(27)(J), asylum under § 1158(b)(3)(C), and placement in the least restrictive setting available under § 1232(c)(2).

**III.   Habeas Corpus Review**

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where a petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws or treaties of the United States."

---

[3] Petitioner has lodged an Amended § 2241 Petition which substitutes Eloy Detention Center Warden Fred Figueroa as Respondent.  (Doc. 12.)

[4] The Court observes that while the Petition cites the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., as a basis for jurisdiction (*see* Doc. 1 ¶ 3), it does not set forth a claim under the APA.

28 U.S.C. §§ 2241(c)(1), (3).  "The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention." *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012). *See also Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Allen v. McCurry*, 449 U.S. 90, 98 n.12 (1980).

Habeas corpus review is not available for claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), or "arising from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9). *See also* 8 U.S.C. § 1252(a)(5) (the court of appeals "shall be the sole and exclusive means for judicial review of an order of removal"); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).  Habeas corpus review is also not available for claims "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding [an alien's] detention or release." *Demore v. Kim*, 538 U.S. 510, 516 (2003) (discussing 8 U.S.C. § 1226(e)); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) ("discretionary decisions granting or denying bond are not subject to judicial review"); *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 827 (9th Cir. 2002) ("§ 2241 does not say that habeas is available to challenge purely discretionary (yet arguably unwise) decisions made by the executive branch that do not involve violations of the Constitution or federal law"). But, "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision.'" *Jennings v. Rodriguez*, 583 U.S. ___, 138 S. Ct. 830, 841 (2018).  Thus, "challenges to the statutory framework" authorizing detention, *Jennings*, 138 S. Ct. at 841, "questions of law" raised in the application or interpretation of detention statutes, *Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011), and "constitutional claims," such as "claims that the discretionary process itself was constitutionally flawed[,] are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241,'" *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez*, 298 F.3d at 829). *See also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for

statutory and constitutional challenges to post-removal-period detention").

### IV. Motion for Temporary Restraining Order

In his Motion, Petitioner requests the Court to order Respondents to immediately transfer him from the custody of DHS to ORR and enjoin Respondents from applying ORR's age determination in evaluating his eligibility for benefits.

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Where a movant seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).[5]

### A. Likelihood of Success on the Merits

In 2002, Congress enacted the Homeland Security Act (HSA), which transferred responsibility to HHS for "'coordinating and implementing the care and placement of unaccompanied alien children,' 'ensuring that the best interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child,' 'implementing policies with respect to the care and placement of unaccompanied alien

---

[5] "A mandatory injunction orders a responsible party to take action," while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotation marks omitted). "The 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014).

children,' and identifying 'a sufficient number of qualified individuals, entities, and facilities to house' such children." *Flores v. Sessions*, 862 F.3d 863, 870 (9th Cir. 2017) (quoting 6 U.S.C. § 279(b)(1)).[6]

In 2008, Congress enacted the Trafficking Victims Protection and Reauthorization Act of 2008 (TVPRA), codified in relevant part at 8 U.S.C. § 1232, which further addressed policies and procedures concerning unaccompanied alien children. Under the TVPRA, consistent with the HSA, "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, [is] the responsibility of [HHS]." 8 U.S.C. § 1232(b)(1). To determine whether an alien is a UAC, the TVPRA directs that "[HHS], in consultation with [DHS], shall develop procedures to make a prompt determination of the age of an alien, which shall be used by [DHS] and [HHS] for children in their respective custody. At a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied alien." 8 U.S.C. § 1232(b)(4).

Pursuant to the TVPRA, "HHS and DHS worked jointly to develop" an implementing guide summarizing the policies and procedures for age determinations. (Doc. 1-2 at 84), Section 1.6, ORR Children Entering the United States Unaccompanied (Jan. 30, 2015) ("ORR Policy Guide").[7] The ORR Policy Guide provides, in relevant part:

> Typically, DHS is the agency that apprehends individuals without lawful immigration status, including unaccompanied alien children (UAC), while HHS is the agency responsible for the care and custody of UAC transferred to its care. HHS authority to provide care and custody applies only to individuals who have not attained 18 years of age.
>
> Each agency acknowledges the challenges in determining the age of individuals in custody. These challenges include, but

---

[6] The HSA defines an "unaccompanied alien child" (UAC) as an alien who: "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom-- (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

[7] *See also* https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied (last visited April 11, 2019).

- 8 -

are not limited to:

- Unavailable documentation;
- Contradictory or fraudulent identity documentation and/or statements;
- Physical appearance of the individual; and
- Diminished capacity of the individual.

The TVPRA requires the age determination procedures, at a minimum, to take into account multiple forms of evidence. Accordingly, under these procedures, each case must be evaluated carefully based on the totality of all available evidence, including the statement of the individual in question.

…

HHS may make age determinations of UAC when they are in HHS custody on a reasonable suspicion that a child in HHS custody is 18 years or older.

In the event there is conflicting evidence regarding the age of an unaccompanied alien child in HHS custody, the HHS funded care provider case worker shall immediately notify the HHS Federal Field Specialist (FFS). The FFS will make the age determination based on his/her review of the multiple forms of evidence collected by the care provider. Until the age determination is made, the unaccompanied alien child is entitled to all services provided to UAC in HHS care and custody.

ORR Policy Guide §§ 1.6 – 1.6.1 (Aug. 31, 2015).

Case managers should seek the following as evidence when conducting age determinations. Information from each category is not required.

Documentation:

- Official government-issued documents, including birth certificates. If the unaccompanied alien child in question is not in possession of original documentation, or if the authenticity of the original documentation is in question, government officials of the unaccompanied alien child's home country must be consulted in order to verify the validity of the documentation.

- Other reliable records (e.g., baptismal certificates, school records, medical records) that indicate the unaccompanied alien child's date of birth.

Statements by individuals (including the unaccompanied alien child) determined to have personal knowledge of the unaccompanied alien child's age, and who HHS concludes can

credibly attest to the age of the unaccompanied alien child:

- Statements provided by the unaccompanied alien child regarding his or her age or birth date. (An unaccompanied alien child's uncorroborated declaration regarding age is not used as the sole basis for an age determination.)

- Statements from the unaccompanied alien child's parent(s) or legal guardian(s), if such persons can be identified and contacted.

- Statements from other persons.

- Information from another government agency (Federal, State, local or foreign)

- State/local arrest records.

- Child welfare agency records.

Medical Age Assessments:

Medical Age Assessments include both the use of imaging technology, such as radiography, and physical examinations. Regarding these assessments:

- A medical professional experienced in age assessment method(s) must perform the examination, taking into account the individual's ethnic and genetic background.

- Dental and skeletal (bone) maturity assessments using radiographs may be used to determine age, but only in conjunction with other evidence.

- As no current medical assessment method can determine an exact age, best practice relies on the estimated probability that an individual is 18 or older. The examining doctor must submit a written report indicating the probability percentage that the individual is a minor or an adult.

ORR Response to Medical Age Assessments:

- The FFS supervisor must review the determination regarding the age submitted by the examining doctor.

- If an individual's estimated probability of being 18 or older is 75 percent or greater according to a medical age assessment, and this evidence has been considered in conjunction with the totality of the evidence, ORR may refer the individual to DHS. The 75 percent probability threshold applies to all medical methods and approaches identified by the medical community as appropriate methods for assessing age.

- The FFS compiles all pertinent information (e.g., how reasonable suspicion was raised that the subject is over 18,

> the information referenced, the individuals or agencies consulted, statements and conclusions) and documents it in a memorandum for review and approval by the FFS Supervisor.
>
> • The FFS then will forward the memo to the care provider facility case manager to be included in the unaccompanied alien child's case file and to the ICE Detention and Removal Office (DRO) Field Office Juvenile Coordinator (FOJC) for inclusion in the unaccompanied alien child's A-file.
>
> At any time, an unaccompanied alien child in ORR care or his/her designated legal representative may present new information or evidence that he/she is 18 or older for re-evaluation of an age determination. New information will be reviewed and evaluated by the FFS and, if necessary, the FFS Supervisor, in a timely manner and shared with the DRO FOJC to determine if the current placement is appropriate. If the new information or evidence indicates that an individual who is presumed to be an unaccompanied alien child is actually an adult, then HHS will coordinate with the assigned FOJC to immediately transfer the individual to an adult DRO facility.

ORR Policy Guide § 1.6.2 (Jul. 5, 2016).

The Court finds that Petitioner has demonstrated a likelihood of success on the merits of his claim that ORR's age determination violated the TVPRA and its implementing policies. Both the TVPRA and the ORR Policy Guide state that a dental radiograph assessment may be used to determine age *only* if it is considered in conjunction with other forms of "evidence." *See* 8 U.S.C. § 1232(b)(4); ORR Policy Guide § 1.6. The age determination memorandum, however, does not indicate that other *evidence* was considered in conjunction with the dental assessment(s) to determine Petitioner's age. None of the additional factors cited in the memorandum are listed among the permissible forms of evidence for evaluating an individual's age. *See* ORR Policy Guide § 1.6.2 (listing evidence that case managers should seek and consider when conducting age determinations). Nor have Respondents offered a plausible construction of the TVPRA or the ORR Policy Guide under which the additional factors – appearance, behavior, and lack of secondary corroborating evidence – qualify as evidence of Petitioner's adult age. In fact, "HHS' guidance does not include appearance or behavior as criteria for evaluating whether an individual is an adult or juvenile, but instead lists appearance as a challenge to

the age determination process. It identifies additional challenges as diminished mental capacity, contradictory or fraudulent documents and statements, and unavailable documentation on date of birth." (Doc. 1-2 at 31), DHS Age Determination Practices for Unaccompanied Alien Children in ICE Custody, OIG-10-12 (Nov. 2009); *see* ORR Policy Guide § 1.6.

In their response to Petitioner's Motion, Respondents provide a declaration from Hillin in which she states that "[a]lthough the age redetermination memorandum is dated October 24, it was only after receiving information from the FOJC that [Petitioner] had a passport showing a birth year of 1997 that [she] determined he could be transferred to [ICE]." (Doc. 7-2 ¶ 14.) Yet, Respondents do not explain why the memorandum was not revised to include this "pertinent information" as required by the ORR Policy Guide. *See* ORR Policy Guide § 1.6.2 ("The FFS compiles all pertinent information … and documents it in a memorandum for review and approval by the FFS Supervisor").[8] Similarly, although Petitioner's birth certificate was listed as a submitted document, neither Respondents nor the memorandum provide any reasons for discounting the certified birth certificate as evidence of Petitioner's age. *See* ORR Policy Guide § 1.6.2 (requiring that "if the authenticity of the original documentation [provided by a UAC] is in question, government officials of the unaccompanied alien child's home country must be consulted in order to verify the validity of the documentation"). Indeed, while the memorandum is entitled "Age Determination of an Individual in ORR Care" and requests Petitioner's transfer to an adult facility, it does not even clearly articulate a determination of Petitioner's age.

By failing to document the evidence considered and conclusions reached in the age determination, Respondents failed to satisfy their obligation to employ a procedure that "take[s] into account multiple forms of evidence, including the non-exclusive use of

---

[8] Nor do Respondents offer any explanation for the shift in opinion concerning Petitioner's passport. Rather, the fact that DHS was aware of the passport and the purported 1997 date of birth at the time of Petitioner's apprehension, but nonetheless designated him as a UAC and transferred him into ORR custody, raises serious questions concerning the probative value of that evidence to determine his age. (*See* Doc. 7-7 at 2, 13.) *See also* ORR Policy Guide § 1.6 (listing "[c]ontradictory or fraudulent identity documentation" as a common challenge to determining an individual's age).

radiographs," 8 U.S.C. § 1232(b)(4), and to make a careful evaluation "based on the totality of all available evidence," ORR Policy Guide § 1.6.  Accordingly, Petitioner is likely to succeed on his claim that ORR's age determination was in contravention of the TVPRA and the ORR Policy Guide, and that his transfer and detention in DHS custody made pursuant to that determination is therefore not authorized by, and is in violation of, the TVPRA.[9]

### B. Likelihood of Irreparable Harm

Petitioner asserts that he will suffer irreparable harm to his ability to seek immigration benefits in the absence of an injunction.  Specifically, he contends that he will lose his ability to pursue asylum and SIJS.  While a loss of available immigration relief may constitute irreparable harm, *see, e.g.*, *Beno v. Shalala*, 30 F.3d 1057, 1063 n.10 (9th Cir. 1994), neither the Petition nor the Motion set forth any specific details concerning his applications or the requirements for obtaining relief.  As a result, the Court lacks any meaningful basis for determining the impact that ORR's age determination will have on his potential eligibility for any form of relief or benefit.  Petitioner has therefore not shown that he is entitled to a temporary restraining order on this basis.

However, the Court finds that Petitioner has shown a likelihood of imminent, irreparable harm in the absence of an order enjoining his continued detention in DHS custody.  In absence of immediate relief, Petitioner will be prevented from being placed "in the least restrictive setting that is in the best interest of [Petitioner]," which he would be entitled to as a UAC in ORR custody pursuant to 8 U.S.C. § 1232(c)(2).  It would defy reason to find that detention in segregation in an adult facility would be "in the best interest" of any minor, or that the extreme harm imposed on a minor from being detained in an adult facility is alleviated by simply placing that minor in segregation.

---

[9] Because the Court concludes that Plaintiff is likely to succeed on his claim that the age determination was invalid and he is detained in DHS custody in violation of the TVPRA, it need not reach the merits of the remaining claims in the Petition.  The Court also does not reach Petitioner's additional arguments that the age determination and his resulting detention in DHS custody violates the *Flores* Agreement and the Prison Rape Elimination Act (PREA) as they are not alleged in the Petition.

### C. Public Interest and Balance of Equities

Where the government is the opposing party, as here, the public interest and balance of equities factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Public interest favors the correct application of federal law. *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011); *N.D. v. Haw. Dep't of Educ.,* 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest."). Because Petitioner has met his burden to establish a strong likelihood of success on the merits of his claim that Respondents have violated the TVPRA, the public interest and balance of equities weigh in his favor.

### D. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no likelihood of resulting harm to Respondents, the Court finds it appropriate to issue the TRO without requiring security.

### V. Conclusion

Petitioner has met his burden to show that there is a strong likelihood of success on the merits of his habeas corpus claim that ORR's age determination and his resulting detention in DHS custody based on that determination violates the TVPRA; that, in the absence of a TRO transferring him into ORR custody, Petitioner would suffer irreparable harm; and that the public interest and balance of equities tip in his favor. Even if the injunctive relief sought could be characterized as mandatory in nature, Petitioner has satisfied the heightened standard; Petitioner has shown that "'extreme or very serious

damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez*, 872 F.3d at 999. ORR's age determination violated the TVPRA and its implementing policies and is therefore invalid. In the absence of any valid alternate age determination, Petitioner's date of birth is deemed to be November 25, 2001. Accordingly, to the extent that Petitioner requests that Respondents be ordered to transfer him from DHS custody into the care and custody of ORR, the motion for a TRO will be granted. The motion is otherwise denied.

**IT IS ORDERED:**

(1) Petitioner's Motion for Temporary Restraining (Doc. 2) **is granted in part** and **denied in part** as set forth above.

(2) ORR's age determination violated the TVPRA and its implementing policies and is thereby **invalid**. Respondents shall immediately **release** Petitioner I.J. from DHS custody into to the care and custody of ORR and shall **transfer** Petitioner to an ORR juvenile facility.

(3) Respondents must file a Notice with the Clerk of Court within **2 days** of the date this Order is filed reflecting compliance with this Order.

Dated this 17th day of April, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge